UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | : | | |
|---|---|---|---|
| WILLIAM RAY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 06-322 (RMU) |
| | : | | |
| v. | : | Document No.: | 6 |
| | : | | |
| HERITAGE CARE, INC., and | : | | |
| | : | | |
| BENJAMIN ADEWALE | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING THE DEFENDANT'S MOTION TO TRANSFER

**I.   INTRODUCTION**

The plaintiff seeks monetary damages from defendants Heritage Care, Inc. and Benjamin Adewale, for allegedly removing him from defendant Heritage Care's nursing home facility without his consent and for failing to readmit him to that same facility. Currently before the court is defendant Heritage's motion to dismiss or transfer.[1] Because the District of Columbia is not a proper venue for the plaintiff's lawsuit, the court grants the defendant's motion to transfer this case to the United States District Court for the District of Maryland.

**II.   BACKGROUND**

The plaintiff, William Ray, suffers from complete paralysis, has complete C-4 tetraplegia

---

[1] The defendants are Heritage Care, Inc. and Benjamin Adewale. Defendant Heritage Care filed the immediate motion. However, because the motion relates to the jurisdiction of this court over both defendants and issues of venue, the court's ruling applies to both defendants. For simplicity, the court refers to the defendants in the singular.

(a paralysis of the arms, legs and trunk of the body), and has muscle spasticity (spasms and involuntary movement). Compl. ¶ 3. Accordingly, the plaintiff is completely dependent on others for all life-sustaining care. *Id.* Defendant Heritage Care, a Maryland corporation, owns and operates the St. Thomas More Nursing & Rehabilitation Center, located in Maryland. On August 24, 2000, St. Thomas More Nursing & Rehabilitation Center accepted the plaintiff for residential nursing care. *Id.* ¶¶ 2, 5. The plaintiff alleges that on February 1, 2004, he was "forcibly removed from his bed, against his will and consent[,] was involuntarily discharged from [the] facility[, and] was transported to Prince George's Hospital Center, located in Prince George's County Maryland. *Id.* ¶ 6. Later that day, he was allegedly discharged from the hospital and returned to the St. Thomas More facility. *Id.* ¶ 10. Apparently, St. Thomas More refused to readmit the plaintiff, and he was transported back to the hospital. *Id.* ¶ 11. Again on February 2, 2004, the plaintiff claims, Prince George's Hospital staff attempted to relocate the plaintiff back to the St. Thomas More facility, but the defendant refused to readmit him and, accordingly, he was returned to the hospital. According to the plaintiff, he remained at the hospital until February 3, 2004, at which time he was admitted into another nursing home. *Id.* ¶ 12.

  The plaintiff claims that the defendant breached a contract to provide ongoing health treatment services to the plaintiff. He also claims wrongful abandonment, negligent infliction of emotional distress, and with regard to defendant Adewale, a psychiatrist at St. Thomas More, psychiatric and medical malpractice. *Id.* ¶¶ 13-35. The plaintiff seeks a total of $3.5 million dollars in compensatory damages and eight million dollars in punitive damages, plus interest, costs, and attorneys' fees.

On February 28, 2006, defendant Heritage filed a motion to dismiss or to transfer. The defendant argues that because none of the alleged tortious actions took place in the District of Columbia and because neither of the defendants are residents or otherwise have contacts with the District of Columbia, the court should either dismiss the case for lack of personal jurisdiction or transfer this case to the United States District Court for the District of Maryland.[2] Def.'s Mot. at 9. In opposition, the plaintiff argues that because he is a lifelong resident of D.C., venue is appropriate under the District of Columbia's Long-Arm Statute, D.C. Code § 13-423(a)(1). Pl.'s Opp'n at 5. The court turns now to the defendant's motion.

### III.  ANALYSIS

#### A.  Legal Standard for Venue under 28 U.S.C. § 1391(a) and Transfer to Pursuant to 28 U.S.C. § 1406(a)

Rule 12(b)(3) instructs the court to dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen forum. FED. R. CIV. P. 12(b)(3). When federal jurisdiction is premised on diversity of citizenship, 28 U.S.C. § 1391(a) controls venue, establishing the following three places where venue is proper:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in

---

[2] The plaintiff filed his opposition on April 12, 2006, approximately one month late. Furthermore, the plaintiff failed to seek leave of the court prior to filing his out of time opposition. On April 26, 2006, the court ordered the plaintiff to show cause why the court should not treat the defendant's motion as conceded and strike the plaintiff's opposition. Mem. Order (April 26, 2006) at 3. The plaintiff has failed to respond to the court's order.

3

which the action may otherwise be brought.

28 U.S.C. § 1391(a).

If the district in which the action is brought does not meet the requirements of section 1391(a), then that district court may either dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision of whether dismissal or transfer is "in the interest of justice" is committed to the sound discretion of the district court. *Naartex Consulting Corp. v. Watts*, 722 F.2d 779, 789 (D.C. Cir. 1983). Generally, the interest of justice requires transferring such cases to the appropriate judicial district rather than dismissing them. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962); *James v. Booz-Allen*, 227 F. Supp. 2d 16, 20 (D.D.C. 2002).

To transfer the action, the court must ensure as a preliminary matter that venue is proper and that the defendants are subject to personal jurisdiction in the transferee forum. *Sharp Elecs. Corp. v. Hayman Cash Register Co.*, 655 F.2d 1228, 1230 (D.C. Cir. 1981) (per curiam); *Crisler v. Schmeltzer*, 1990 WL 113887, at *2 (D.D.C. July 24, 1990). The decision regarding transfer rests within the court's sound discretion. *Naartex*, 722 F.2d at 789. The D.C. Circuit favors transfer under section 1406(a) "when procedural obstacles [such as lack of personal jurisdiction, improper venue, and statute-of-limitations bars] impede an expeditious and orderly adjudication on the merits." *Sinclair v. Kleindienst*, 711 F.2d 291, 293-94 (D.C. Cir. 1983). "A court may transfer a case to another district even though it lacks personal jurisdiction over the defendants." *Naartex*, 722 F.2d at 789 (citing *Goldlawr*, 369 U.S. at 466); *Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 50 (D.D.C. 1994).

4

### B. The District of Columbia is not a Proper Venue

Defendant Heritage argues that because neither of the two defendants are District of Columbia residents, because none of the activities alleged in the complaint occurred in the District of Columbia, and because this action can be brought in the federal court in Maryland, the court should transfer this case. Def.'s Mot. at 9-16. The court agrees.

Defendant Heritage is incorporated in Maryland and conducts business through St. Thomas More Nursing & Rehabilitation Center, located in Maryland. Pl.'s Opp'n ¶ 3. Defendant Adewale, a doctor at the Maryland nursing home, is a resident of Virginia. *See* Compl. at 1, ¶ 4. For these reasons, the District of Columbia does not constitute "a judicial district where any defendant resides." 28 U.S.C. § 1391(a).

In opposition to the defendant's motion to transfer, the plaintiff emphasizes that he is a citizen and resident of the District of Columbia. Pl.'s Opp'n at 2, 3, 5.[3] To the plaintiff, this factor bolsters his claim that venue is appropriate in this court. Pl.'s Opp'n at 4 (stating that because "plaintiff is a resident and a life-long citizen of the District of Columbia . . . . [i]t is his choice to bring this action in his home forum that [sic] is most convenient for him and the prosecution of his cause [sic]"). The plaintiff fails to indicate, however, how the residency of the plaintiff bears on the appropriateness of venue. To reiterate, § 1391(a) indicates that venue is appropriate in "a judicial district where any defendant resides." 28 U.S.C. § 1391(a). The citizenship of the plaintiff, for venue purposes, is irrelevant.

The defendant also seeks dismissal or transfer on the grounds that none of the alleged

---

[3] The plaintiff's opposition lacks page numbers. The court, therefore, will refer to the pages indicated in the court's Electronic Case Filing system.

tortious actions took place in the District of Columbia. The defendant is correct – the plaintiff's complaint does not allege any tortious conduct which occurred in the District of Columbia. To the contrary, the events surrounding this case all involve the defendant's alleged mistreatment of the plaintiff in Maryland. *See generally*, Compl. For this reason, this case does not present an instance in which "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a).

Finally, venue in the District of Columbia would be appropriate if (1) "there is no district in which the action may otherwise be brought," and then only if (2) "any defendant is subject to personal jurisdiction at the time the action is commenced." *Id.* In this case, the plaintiff concedes that he "could have brought this action in Maryland." Pl.'s Opp'n at 3. Assuming arguendo that the District of Columbia constituted the sole jurisdiction in which the plaintiff could bring this case, it is doubtful that this court has personal jurisdiction over this defendant.

The plaintiff argues that because defendant Heritage "is located less than 1 mile from the D.C. boundary line," because Heritage has "a substantial resident population who are legal citizens of the District," and because the District of Columbia makes payments (as a ward) "to provide care for these citizens," that the nature of the contact between defendant Heritage and the District of Columbia is "ongoing" and "substantial." Pl.'s Opp'n at 6. In support of his position, the plaintiff cites *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320 (D.C. 2000). *Id.*[4] The plaintiff's citation to the *Shoppers* case is curious given that the case does not support the plaintiff's position. In *Shoppers*, the D.C. Court of Appeals ruled that because Shoppers Food Warehouse, a chain grocery store with locations in Virginia and Maryland, consistently marketed

---

[4] The plaintiff's citation to *Shoppers* indicates, incorrectly, that the decision was issued in 1980.

6

and advertised in the District of Columbia, it conducted "purposeful, affirmative activity within the District of Columbia." *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 331 (D.C. 2000) (internal citations omitted). Here, by contrast, the defendant has no direct contact with the District of Columbia, though it does have contact with District of Columbia residents while those residents are in Maryland.[5]

The plaintiff also argues that under the District of Columbia's long-arm statute, D.C. Code § 13-423(a)(1), a non-resident may be subjected to the jurisdiction of D.C. courts if the defendant "transacts any business in the District of Columbia." Pl.'s Opp'n at 5 (quoting D.C. Code § 13-423(a)(1)). What the plaintiff fails to mention, however, is that when jurisdiction over the defendant is predicated solely on section 13-423(a)(1), "only a claim for relief arising from acts enumerated in [that section] may be asserted against him." *Novak-Canzeri v. Saud*, 864 F. Supp. 203, 206 (D.D.C. 1994) (citing D.C. Code § 13-423(b)). The plaintiff's claims, however, do not arise from § 13-423. *See* Compl. at 1 (identifying the general causes of action in this case as breach of contract, negligence, and intentional infliction of emotional distress).

---

[5] The plaintiff attaches a document titled "Referral for Long Term Care," apparently authored by the D.C. Government referring the plaintiff to the defendant nursing home for residential treatment. Pl.'s Mot. Attach 1. To the plaintiff, this supports its assertion that defendant Heritage maintains ongoing payment arrangements with the D.C. government concerning the health and well being of District of Columbia residents. Pl.'s Mot. at 6. Though the plaintiff might be correct in this assertion, it does little to undermine the defendant's position. The nature of the dispute at issue in this case is the residential care (or lack thereof) of the plaintiff by the defendant but does not concern payments made by the District of Columbia, or the transfer documents. Accordingly, the instant law suit does not "arise out of or relate to' those activities." *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 332 (D.C. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

## IV. CONCLUSION

For the reasons herein, the court grants the defendant's motion to transfer. An order directing the parties in a manner consistent with this memorandum opinion is separately and contemporaneously issued this 24th day of July, 2006.

RICARDO M. URBINA
United States District Judge
